IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TIRNELL WILLIAMS, # B-58000, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-cv-392-GPM |
| ) | |
| ILLINOIS DEPARTMENT of ) | |
| CORRECTIONS, MARC HODGE, ) | |
| and INTEL LOY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Plaintiff, currently incarcerated at Lawrence Correctional Center ("Lawrence"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is serving an eight year sentence for possession of a stolen vehicle. Plaintiff claims that he has been wrongly denied placement in protective custody, and has been punished with continued placement in segregation based on false disciplinary reports. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A.

**The Complaint**

Plaintiff, who depends on a wheelchair for mobility and has several serious medical conditions, previously filed an action in this Court that included some of the allegations herein: *Williams v. Hodge*, Case No. 13-cv-216-JPG-PMF. Proceeding in that case are his claims that he was housed in a cell between October 2012 and January 2013 that was not in compliance with the requirements of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act, and that two defendants were deliberately indifferent to his medical needs (Counts 1 and 2).

However, Counts 4 and 5 in that action were dismissed without prejudice because, as pleaded, Plaintiff failed to state a claim. These included a claim against Defendant Loy (Internal Affairs/Intelligence Officer) for deliberate indifference to a serious risk to Plaintiff's safety, and a claim for denial of due process in a disciplinary action that resulted from his request to be placed in protective custody (*see* Doc. 15 in Case No. 13-cv-216). Plaintiff was instructed that these claims regarding his safety and protective custody belonged in a separate lawsuit. Plaintiff now seeks to revive these claims in this action.

According to the complaint, on January 7, 2013, Plaintiff was issued a disciplinary ticket for disobeying a direct order to move back to his cell (Doc. 1, p. 5; "Exhibit A," Doc. 1, p. 11). Evidently, Plaintiff had been in investigative or administrative segregation. When he was ordered to go back to general population, he "refused housing" because he had requested to be placed in protective custody ("PC") for his own safety after he received threats from two Lawrence inmates who belonged to the same gang as an individual against whom Plaintiff had testified in a murder case (Doc. 1, p. 5).

On January 9, 2013, Plaintiff met with Defendants Hodge (the warden at Lawrence), Loy, and other officials regarding his PC request (Doc. 1, p. 5). Defendant Loy, who had separated Plaintiff from the other inmates a week before, had substantiated the threats to Plaintiff's safety (Doc. 1, p. 5). Defendant Hodge ordered paperwork to be prepared for Plaintiff's transfer to another prison (Doc. 1, p. 5). Two days later, Plaintiff signed papers for protective custody and to put these inmates on his "Keep Separate From" ("KSF") list in order to prevent him from being housed in the same prison as those individuals (Doc. 1, p. 5). Defendants Loy and Hodge refused to give him copies of these documents. Plaintiff remained in segregation awaiting the promised transfer (Doc. 1, p. 6).

On January 24, 2013, Plaintiff was notified of the disciplinary action taken as a result of the January 7 ticket for refusing housing—he was given one month in disciplinary segregation (Doc. 1, pp. 6, 11). Plaintiff believes this ticket should have been invalidated when the investigation verified the threat to his safety (the summary report notes that Plaintiff did not appear before the hearing committee or enter a plea). He was then told by Defendant Loy that his transfer had been denied (Doc. 1, p. 6). Plaintiff believes that the transfer was never requested because there were other prisoners on his "KSF" list in each of the other ADA-compliant prisons where he might be sent.

Plaintiff filed a grievance over this disciplinary action, which was denied because his claim of danger could not be substantiated (Doc. 1, p. 6). This response contradicted Defendant Loy's earlier investigation which found the threats to be credible. Another officer told Plaintiff that according to Defendant Loy, Plaintiff would not be moved because Lawrence was the only place where Plaintiff did not have KSF's, and that is why he was given 30 days segregation (Doc. 1, p. 6).

On February 7, 2013, Plaintiff was to be released to general population, but again refused to go out of fear for his life (Doc. 1, p. 6). On the authority of Defendant Hodge, he was given another disciplinary ticket (Doc. 1, p. 12) for disobeying an order. Plaintiff contested the ticket. At his hearing, the adjustment committee told him that Defendant Hodge instructed them to give Plaintiff 60 more days in disciplinary segregation if he did not go to general population that day (Doc. 1, p. 6). According to Plaintiff, he did not have the opportunity to present witnesses or a defense (Doc. 1, p. 6). The report notes that Plaintiff "has no verified enemies at Lawrence, according to the Intelligence Unit," and Plaintiff was punished with two more months in segregation (Doc. 1, p. 12).

Plaintiff asserts that Defendants refused to place him in PC because the PC cells in Lawrence are not ADA-compliant, thus discriminating against him in violation of the ADA (Doc. 1, pp. 7-8). Further, when Defendants Loy and Hodge learned that Plaintiff has enemies (KSF's) in the other ADA-compliant prisons, they refused to transfer him and refused to put the Lawrence inmates on his KSF list (Doc. 1, p. 7). Defendants then lied about their earlier conclusion that Plaintiff was in danger, and issued the false disciplinary report to "make his segregation time look authentic" (Doc. 1, p. 7). Plaintiff views the disciplinary action (and threat of future discipline if he continues to refuse housing) as an attempt by Defendant Hodge to force him back into general population where he will be in danger.

The complaint seeks compensatory and punitive damages and a declaration that Defendants have violated Plaintiff's constitutional rights (Doc. 1, p. 8). Although Plaintiff did not specifically request an injunction in his prayer for relief, he does recite that he "has no plain adequate or complete remedy at law" to redress his complaints. *Id*. The Court takes this as an indication that Plaintiff intended to ask for injunctive relief, and shall construe the complaint accordingly.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint. Accepting Plaintiff's allegations as true, the Court finds that he has articulated the following colorable federal causes of action, which shall receive further review:

**Count 1:** Against the Illinois Department of Corrections, for violation of the Americans with Disabilities Act and the Rehabilitation Act, in that Plaintiff is being excluded from placement in protective custody on the basis of his disability because there are no ADA-compliant protective custody cells in Lawrence;

**Count 2:** Against Defendants Hodge and Loy for failure to protect Plaintiff from a serious risk of injury after he reported threats from fellow inmates; and

**Count 3:** Against Defendants Hodge and Loy for deprivation of a liberty interest without due process, in that Plaintiff was punished with segregation without a fair hearing.

As to Count 1, it was noted in Plaintiff's previous case (No. 13-cv-216) that where a *pro se* plaintiff alleges a violation of the ADA, it is appropriate for the court to also consider a claim under the Rehabilitation Act. *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012); *Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 672-73 (7th Cir. 2012). Under either statute, injunctive relief may be available. Thus, Count 1 is not subject to dismissal at this stage of the litigation. However, the availability of damages in the context of an ADA Title II claim is unclear in the absence of a constitutional violation. *United States v. Georgia*, 546 U.S. 151 (2006) (a court should make a case by case determination of whether Congress' purported abrogation of sovereign immunity is valid when the challenged conduct violates the ADA but not the Constitution).

As to Count 2, Plaintiff has fortunately not suffered an actual attack from either of the inmates who threatened him. In such a case, the Supreme Court has indicated that injunctive relief could be an appropriate remedy for a prisoner who received a credible threat of attack by another inmate. *Farmer v. Brennan*, 511 U.S. 825, 850-51 (1994) (holding that on remand district court should address whether injunction would be appropriate based on evidence to be adduced regarding the likelihood of transsexual inmate's transfer to a setting where he could face greater threat). Prior to *Farmer*, courts recognized a prisoner need not wait until he is actually assaulted before he may obtain relief. *Ramos v. Lamm,* 639 F.2d 559, 572 (10th Cir. 1980); *Woodhouse v. Com. of Va.*, 487 F.2d 889, 890 (4th Cir. 1973); *see also Benefield v. McDowall*,

241 F.3d 1267 (10th Cir. 2001). Plaintiff's complaint indicates that Defendants verified a credible threat to his physical safety, yet did not take steps to protect him. Thus, Count 2 is not subject to dismissal at this stage of the litigation.

In Count 3, Plaintiff alleges that his disciplinary hearing was not conducted in accordance with the due process protections guaranteed by *Wolff v. McDonnell*, 418 U.S. 539 (1974). Those include advance written notice of the charge; the right to appear before the hearing panel and present a defense; the right to call witnesses if prison safety allows; and a written statement of the reasons for the discipline imposed. *Id.* at 563-67. An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her disciplinary confinement impose "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) (noting that in light of *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small"). For prisoners whose punishment includes being put in disciplinary segregation, under *Sandin*, "the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population." *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). To assess whether disciplinary segregation conditions impose atypical and significant hardships, a court must consider "the combined import of the duration of the segregative confinement *and* the conditions endured by the prisoner during that period." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697–98 (7th Cir. 2009) (emphasis in original). Plaintiff was punished with disciplinary segregation for a cumulative total of three months. The circumstances described by Plaintiff indicate that if he again "refuses housing" for his own safety, he may well be subject to additional disciplinary segregation. This term of segregation is lengthy enough to trigger an

inquiry into the conditions of that disciplinary confinement, which the complaint does not illuminate. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). Thus, Count 3 is not subject to dismissal at this stage of the litigation.

**Pending Motion**

Plaintiff's motion for service of process at government expense (Doc. 3) is **GRANTED**; service shall be ordered below.

**Disposition**

The Clerk of Court shall prepare for Defendants **ILLINOIS DEPARTMENT of CORRECTIONS, HODGE** and **LOY**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is

entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED:  May 29, 2013

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge